**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RONNIE GLENN TRIPLETT,** | ) | |
| **ID # 15692-064,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:08-CV-1252-K (BH)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| **Defendant.** | ) | **Pretrial Management** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**</u>

Pursuant to Special Order No. 3-251, the District Court referred this case for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court is *Defendant's Motion to Dismiss or Alternatively for Summary Judgment* ("Mot."), filed by Defendant Federal Bureau of Prisons ("Defendant" or "BOP") on November 20, 2008, ( doc. 25).

Based on the relevant filings and applicable law, Defendant's Rule 12(b)(1) motion to dismiss should be **GRANTED,** in part, and its alternate motion for summary judgment should be **GRANTED**.

## I.  BACKGROUND[1]

From November 2005 through June 15, 2007, Plaintiff Ronnie Glenn Triplett ("Plaintiff") worked as a prisoner law clerk in the law library at the Federal Correctional Institute (FCI) - Seagoville.  (*See* Original Compl. ¶¶ 14-15, attached to Compl.)  On June 15, 2007, a search of his work area revealed seven files of civil actions against the BOP belonging to other inmates and three

---

[1]  The background is taken from administrative records from the prison, (*see* App. to Def.'s Mem. Supp. Mot. [hereinafter "BOP's App."] and filings in this action, including Plaintiff's complaint and attached "Original Complaint", which were both verified or certified under penalty of perjury to be true and correct.

books of two cent stamps;[2] these items were confiscated.  (*Id.* ¶ 24; BOP's App. at 3.)  On June 16,

2007, Plaintiff received a written incident report alleging a violation of Code 305 – possession of

unauthorized legal papers of another inmate.[3]  (BOP's App. at 3.)  In pertinent part, the incident

report alleged a Code 305 violation for "POSSESSION OF ANYTHING UNAUTHORIZED"[4] and

described the incident as follows:

> WHILE SHAKING DOWN THE CLERKS AREA OF THE LAW LIBRARY I
> DISCOVERED SEVERAL FOLDERS CONTAINING INMATE TRIPLETTS [sic]
> LEGAL WORK.  AS I BEGAN SEARCHING THROUGH THE NUMEROUS
> FOLDERS, I DISCOVERED SEVERAL OTHER INMATES [sic] LEGAL WORK
> . . . ONE OF THE INMATES [sic] PAPERWORK . . . THAT INMATE TRIPLETT
> APPEARED TO BE WORKING ON IS HOUSED AT THE CAMP, WHICH
> WOULD LEAVE INMATE TRIPLETT IN POSSESSION OF ANOTHER
> INMATES [sic] LEGAL WORK ON A FULL TIME BASIS.

(*See id.*)

On or about June 20, 2007, Plaintiff was found guilty at a disciplinary hearing and sanctioned

with the loss of (1) thirty days commissary and telephone privileges and (2) his job as law clerk.

(*See id.* at 4.)[5]  Plaintiff maintained that it was completely permissible for him to possess legal

materials belonging to other inmates within the confines of the law library, and that the Code 305

violation was mistakenly premised on a belief that the legal documents, all captioned with "John

---

[2]  Plaintiff states that the quantity of stamps is limited to three books of two-cent stamps in his verified original complaint (*see* Original Compl. ¶ 24) and in his affidavit submitted in response to Defendant's motion (*see* Decl. Triplett ¶¶ 14, 17, attached to Pl's App.).  Defendant does not contest that the relevant stamps are limited to this quantity, although nothing in the administrative record reveals the quantity or value of the stamps.

[3]  The incident report also alleged a violation of Code 408 (conducting a business), but that violation was overturned on appeal and is not at issue in this case.

[4]  More specifically, Code 305 stands for "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels."  *See* 28 C.F.R. § 541.13 (Table 3).

[5]  Although Plaintiff claims that he also lost preferred housing (*see* Original Compl. ¶ 27), the sanctions listed in the administrative record do not reflect this (*see* Bop's App. at 4).

Beaird, et al." as plaintiffs, belonged to Mr. Beaird, rather than the other plaintiffs in the action.[6] (Original Compl. ¶¶ 27-28.) Plaintiff obtained no relief through the administrative review process, (*id.* ¶¶ 30-32; BOP's App. at 12-20), and he was ultimately transferred to his place of current incarceration, FCI Texarkana, (*see* Compl. at 1).

In June 2008, Plaintiff filed this action. (*See id.* at 1-4; Attachment A to Compl.; Original Compl. ¶ 9.) In September 2008, the Court dismissed all claims except for a claim for declaratory and injunctive relief against the BOP under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2). (*See* Findings, Conclusions, and Recommendation ("FCR"), doc. 15; Order Accepting Findings & Recommendation ("Order Accept."), doc. 18.) According to Plaintiff, he was sanctioned for conduct that was not prohibited by any policy and that was regularly practiced by other inmates. (Original Compl. ¶¶ 10, 36-56.) He contends the BOP abused its discretion when it (1) found him guilty of the Code 305 violation; (2) sanctioned him for the violation; and (3) transferred him from FCI Seagoville as additional punishment for causing seven civil actions to be filed against the BOP. (*Id.* ¶ 27.) He also claims that the BOP abused its discretion and acted arbitrarily and capriciously when it failed to consider dispositive factors, relied on erroneous assumptions, and failed to artic-ulate a rational relationship between the facts and the decision to sanction him. (*Id.* ¶ 55, Compl. at 4.)

Defendant filed this motion to dismiss and alternate motion for summary judgment on

---

[6] Beaird and several other Seagoville inmates filed an action against the BOP, the United States, Alberto Gonzales, and numerous individuals associated with FCI Seagoville. After that action was transferred to this Court in April 2006, the Court dismissed the action without prejudice and directed each individual plaintiff to file a separate action. *See Beaird v. Lappin*, No. 3:06-CV-0967-L (N.D. Tex. July 24, 2006) (Mem. Op. & Order). Beaird was lead plaintiff and allegedly drafted all filings in the combined action, but was transferred from the main Seagoville facility before the Seagoville inmates received the July 24, 2006 order. Consequently, seven inmates came to Plaintiff for legal assistance in filing their new complaints, and he kept their files in the law library.

November 20, 2008, along with an appendix ("BOP's App.") and memorandum ("BOP's Mem.") in support. On December 22, 2008,[7] Plaintiff filed a response ("Resp."), supporting memorandum ("Pl.'s Mem."), and appendix ("Pl.'s App."). Defendant filed an untimely reply on January 7, 2009.[8] The issues are now ripe for determination.

## II. RULE 12(b)(1) MOTION TO DISMISS

Although Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(6) and summary judgment under Fed. R. Civ. P. 56, it also challenges this Court's jurisdiction over this case on several grounds. (*See* Mot. at 1; BOP's Mem. 4-8.) A motion to dismiss for lack of subject matter jurisdiction is properly brought pursuant to Rule 12(b)(1).

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a

---

[7] Pursuant to the well-established prison mailbox rule, Plaintiff's filings were deemed filed when he placed them in the prison mail system on December 22, 2008. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir.1995) (prisoner civil pleadings); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (holding that the mailbox rule generally applies to all prisoner district court filings).

[8] By Order of December 3, 2008, the Court extended the deadline for Plaintiff's response to Defendant's motion until December 22, 2008, and extended Defendant's deadline for a reply brief until January 2, 2009. Defendant contends that it did not receive the response until December 29, 2008, and asks that the Court accept its reply as timely. (*See* Reply at 1.) Because Defendant did not make that request until after the January 2, 2009 deadline had passed, the Court may extend the time for filing only on motion from Defendant showing excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Because Defendant did not file a motion, the reply is untimely and will not be considered. Even if considered, however, it would not alter the recommendation on Defendant's motions.

determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id.* If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.").

In this case, Defendant does not support its 12(b)(1) motion with evidence. It merely presents a facial attack that does not require the Court to resolve matters outside the pleadings. *See Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 412-13.

**A. <u>Independent Basis</u>**

Although recognizing that 28 U.S.C. § 1331 grants federal courts jurisdiction over claims arising under the laws of the United States, Defendant appears to argue that this Court lacks jurisdiction over Plaintiff's APA claims because the APA provides no independent basis for jurisdiction. (*See* BOP's Mem. at 6-7)

In general, the APA provides an avenue by which persons "suffering legal wrong because

of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" may obtain judicial review.[9]  5 U.S.C. § 702.  This section "creates a presumption that individuals can bring suit to challenge agency actions that cause legally cognizable injury." *Alabama v. EPA*, 871 F.2d 1548, 1559 (11th Cir. 1989) (cited with approval in *Voluntary Purch'g Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989)).  Nevertheless, the APA itself sets forth "several limitations" on its applicability.  *See Reilly*, 889 F.2d at 1385-86.  Federal courts have no jurisdiction to review agency action when (1) a statute precludes judicial review or (2) "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a);  *see also Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984)(the general cause of action conferred by the APA is withdrawn when either of the two § 701(a) exceptions apply ).  Moreover, judicial review under the APA is limited to "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court."  *See Reilly*, 889 F.2d at 1386 (quoting 5 U.S.C. § 704).  Thus, although there is a "'strong presumption' that Congress intends that the federal courts review agency action", such presumption may be rebutted by a proper showing by the defendant.  *Lundeen v. Mineta*, 291 F.3d 300, 305 (5th Cir. 2002).

In the case relied upon  by Defendant, *Califano v. Sanders*, 430 U.S. 99, 101-08 (1977), the Supreme Court reversed a lower court's finding that the APA provides an independent basis for federal subject matter jurisdiction.  Nevertheless, if the APA creates a cause of action for Plaintiff's

---

[9]  As used in Chapter 7 of the APA, "agency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *See* 5 U.S.C. § 701(b)(2) (deferring to definition set out in 5 U.S.C. § 551(13)) .  For purposes of Chapter 7 of the APA, "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency", except for eight exceptions none of which include the BOP.  *Id.* § 701(b)(1).  This is the same definition used in Chapter 5 of the APA except that the last four exceptions listed in Chapter 5 are only excluded from the definition for purposes of § 552.  *See* 5 U.S.C. § 551(1).

claims, "jurisdiction exists under the general federal question statute [(28 U.S.C. § 1331)], not the APA." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152 n.13 (5th Cir. 1998); *accord Lundeen*, 291 F.3d at 305; *Porter v. Califano*, 592 F.2d 770, 771 n.1 (5th Cir. 1979). In explaining the reasons for reversing the lower court decision, the Supreme Court recognized a then recent amendment to 28 U.S.C. § 1331:

> On October 21, 1976, Congress enacted Pub.L. 94-574, 90 Stat. 2721, which amends 28 U.S.C. § 1331(a) to eliminate the requirement of a specified amount in controversy as a prerequisite to the maintenance of "any (s 1331) action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." *The obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate.* We conclude that this amendment now largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision.

430 U.S. at 105 (emphasis added). It also rejected an argument that modifying § 1331 merely supplemented the APA and thus did not affect whether the APA was a distinct jurisdictional provision. *Id.* at 107 n.7. In doing so, the Supreme Court relied upon legislative history behind the amendment of § 1331:

> "An anomaly in Federal jurisdiction prevents an otherwise competent United States district court from hearing certain cases seeking 'nonstatutory' review of Federal administrative action, absent the jurisdictional amount in controversy required by 28 U.S.C. section 1331, the general 'Federal question' provision. *These cases 'arise under' the Federal Constitution or Federal statutes, and the committee believes they are appropriate matters for the exercise of Federal judicial power regardless of the monetary amount involved.*"

*Id.* (emphasis added and citations omitted).

Section 1331 provides a jurisdictional basis over APA claims as a general principle even though the APA itself does not constitute an independent basis for federal jurisdiction. Defendant's motion to dismiss on this ground should be denied.

**B. <u>Statutory Limitations</u>**

Defendant next relies on the limitations on jurisdiction in 5 U.S.C. §§ 701(a) and 704. (*See* BOP's Mem. at 7-8.) Defendant has the burden to show that a limitation applies to preclude judicial review. *See Lundeen v. Mineta*, 291 F.3d 300, 305 (5th Cir. 2002).

1. *Section 701(a)*

Defendant contends that 18 U.S.C. § 3625 precludes APA review to the extent Plaintiff complains of its decision to transfer him from FCI Seagoville. (*See* BOP's Mem. at 8.) This contention falls within the purview of § 701(a)(1), which provides that federal courts lack jurisdiction to review agency action where judicial review is statutorily precluded. Section 3625, titled "Inapplicability of the Administrative Procedure Act", expressly makes the APA inapplicable "to the making of any determination, decision, or order" under sections 3621 through 3626 of Title 18 of the United States Code. Section 3621(b) authorizes the BOP to initially designate the place of imprisonment for federal prisoners and to make transfer decisions for such prisoners. Section 3625 therefore precludes jurisdiction over Plaintiff's claim regarding BOP's transfer decision, and the motion to dismiss pursuant to 12(b)(1) should be granted on this claim.

2. *Section 704*

Defendant next argues that jurisdiction is lacking because Plaintiff could have filed a habeas petition pursuant to 28 U.S.C. § 2241 to challenge the discipline findings and sanctions imposed by BOP staff. (*See* BOP's Mem. at 7-8.) In support, he cites 5 U.S.C. § 704 and two cases interpreting that statute. (*Id.* at 7.)

Section 704 provides: "Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review." In *Bowen v.*

8

*Massachusetts*, 487 U.S. 879 (1988), the Supreme Court rejected the "novel submission" that § 704 barred an action under the APA because limited relief might be available in the Claims Court. *See* 478 U.S. at 901-09. In doing so, it recognized that § 704 primarily concerned exhaustion of administrative remedies prior to proceeding with an APA claim in federal court. *Id.* at 902. The Supreme Court also recognized that § 704 "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action" but elaborated on that generalization:

> When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to *duplicate the previously established special statutory procedures relating to specific agencies*.
>> The exception that was intended to avoid such duplication should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action.

*Id.* at 903 (emphasis added). The Court found that "[a] restrictive interpretation of § 704" would be contrary to the purpose of the APA, and thus rejected the "restrictive – and unprecedented – interpretation of § 704 . . . because the remedy available . . . in the Claims Court is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *Id.* at 904. In short, "[t]he Supreme Court [has] narrowly construed this limitation to apply only in instances when there are 'special and adequate review procedures' that permit an adequate substitute remedy." *Sharkey v. Quarantillo*, 541 F.3d 75, 90 n.14 (2d Cir. 2008).

Neither *Bowen* nor § 704 support the broad preclusion of jurisdiction advocated by the BOP. This APA action does not duplicate any special statutory procedure related to the BOP. While § 2241 may provide an acceptable avenue for federal prisoners to challenge prison disciplinary proceedings, *see*, *e.g.*, *Escamilla v. Chandler*, 204 Fed. App'x 395, 395-96 (5th Cir. 2006) (per

curiam) (addressing denial of § 2241 habeas petition filed by federal inmate to challenge a prison discipline proceeding); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 897-99 (5th Cir. 2000) (per curiam) (same), it does not merely set forth a statutory procedure applicable to review BOP decisions. Under *Bowen*'s interpretation of § 704, the potential availability of habeas relief under § 2241 does not preclude an APA action.[10]

Defendant also relies on *Murphy v. Garrett*, 729 F. Supp. 461 (W.D. Pa. 1990). (BOP's Mem. at 7.) In *Murphy*, a military reservist filed a civil complaint seeking declaratory and injunctive relief and damages, and the court construed it as a federal habeas petition filed pursuant to § 2241. *See* 729 F. Supp. at 461-64. It found that it had habeas jurisdiction over the action, and alternatively, that it had jurisdiction under 28 U.S.C. §§ 1331 and 2201 to entertain his request for injunctive declaratory relief for violations of his procedural due process rights but no jurisdiction for entertaining his claim for damages. *Id.* at 466-67. In a footnote, the court found no jurisdiction under the APA because Murphy had failed to exhaust his military remedies and because he had other adequate remedies to challenge his court martial, *i.e.*, a habeas petition or civil action for injunctive and declaratory relief in federal court or an action in the military courts. *Id.* at 467 n.9. In *Murphy*, not only was there no final agency action in that case as shown by the lack of exhaustion, *see* 5 U.S.C. § 704, Murphy had other adequate remedies available through the military courts. Those remedies appear to be the type of special review procedures contemplated in *Bowen*.

_____

[10] That a habeas action may be an appropriate form of action under the APA, *see Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1016 n.12 (9th Cir. 2000); *Brown v. Lundgren*, 528 F.2d 1050, 1053-54. (5th Cir. 1976); 5 U.S.C. § 703, does not mean it is the exclusive form of action in all circumstances, *see Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that challenge to fact or duration of custody must proceed in habeas corpus); *Ahmad v. Ortiz*, 44 F.3d 1004, 1994 WL 733500, at *3 (5th Cir. 1994) (addressing a challenge to prison discipline proceedings in civil action filed pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). Because Plaintiff lost no time credits as a result of the relevant prison disciplinary proceedings against him, this is not a case where Plaintiff is challenging the very fact or duration of his physical imprisonment or seeks an immediate or speedier release from imprisonment.

Plaintiff in this case has exhausted his administrative remedies, and Defendant has shown no available special review procedure consistent with *Bowen*. There is no dispute that Plaintiff challenges a final agency action. For these reasons alone, *Murphy* is distinguishable from this case, and Defendant's motion to dismiss should be denied on this basis.

## C. Non-statutory Limitation on Application of APA

Defendant also cites *Clardy v. Levi*, 545 F.2d 1241 (9th Cir. 1977), as support for limiting the applicability of the APA in the prison discipline context. (BOP's Mem. at 8.)

*Clardy* concludes that the APA does not apply to prison disciplinary proceedings whereas *White v. Henman*, 977 F.2d 292 (7th Cir. 1992) reaches the opposite conclusion. (*See* FCR at 7 n.5.) While recognizing that the BOP falls within the literal definition of agency as used in the APA, and that applying it to prison disciplinary proceedings "would have respectable support in the precedents", *Clardy* found the APA inapplicable in such context without relying on any APA provision. *See* 545 F.2d at 1244-46. *White*, on the other hand, reaches its conclusion because the BOP is an agency within the meaning of the APA. *See* 977 F.2d at 294 (relying on the Chapter 5 definition of agency).

A plain reading of the statute shows that the BOP is not excluded from the relevant definition of agency. *See* 5 U.S.C. § 701(b)(2). Furthermore, in other contexts, courts have identified the BOP as a federal agency. *See*, *e.g.*, *Lopez v. Davis*, 531 U.S. 230, 231 (2001) (referring to the BOP as "the agency empowered to administer the early release program"); *Reno v. Koray*, 515 U.S. 50, 60 (1995) (referring to the BOP "the agency charged with administering the credit statute"); *Warren v. Miles*, 230 F.3d 688, 692-93 & n.3 (5th Cir. 2000) (referring to the BOP as an agency and recognizing that its "internal agency guidelines", unlike its regulations, are not subject to the APA).

The Fifth Circuit has previously assumed arguendo that the APA applies to the BOP in the disciplinary context. *See McGlinchey v. United States*, 996 F.2d 306, 306, 1993 WL 241793, at *2 (5th Cir. 1993) (per curiam). The Court should affirmatively decline to follow *Clardy* and find the APA applicable in the instant context.

In conclusion, the Court should grant Defendant's Rule 12(b)(1) motion to dismiss to the extent Defendant seeks to dismiss Plaintiff's claim regarding his transfer from FCI Seagoville. The 12(b)(1) motion should otherwise be denied.

### III. RULE 12(b)(6) MOTION TO DISMISS

Defendant also moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because its imposition of disciplinary sanctions did not violate the APA. (BOP's Mem. at 8-13.)

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In the 12(b)(6) context, pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In addition, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his or] her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils.*,

*Inc.*, 847 F.2d 186, 196 & n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x 775, 783 (5th Cir. 2007).

To support its motion, Defendant provides additional material that Plaintiff did not file with his complaint.  (*See* BOP's App. at 6-11, 21 (Ex. E filed under seal).)  In response to Defendant's motion, Plaintiff likewise provides additional materials.  (*See* Pl.'s App.)  The Court therefore proceeds to Defendant's alternate motion.  *See* Fed. R. Civ. P. 12(d).

## IV.  RULE 56 MOTION FOR SUMMARY JUDGMENT

Defendant moves, in the alternative, for summary judgment on grounds that its imposition of disciplinary sanctions for Plaintiff's Code 305 violation did not violate the APA.  (BOP's Mem. at 8-13.)

### A.  Modified Rule 56 Standard in APA Actions

Parties may seek summary judgment in APA actions seeking judicial review.  *See Porter v. Califano*, 592 F.2d 770, 771 (5th Cir. 1979).  When a court reviews administrative action under the APA, "a motion for summary judgment 'stands in a somewhat unusual light'" because the administrative record typically "provides the complete factual predicate for the court's review."  *Tex. Comm'n on Natural Res. v. Van Winkle*, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002) (citations omitted).  In such cases, "the function of the district court is to determine whether as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did, and summary judgment is an appropriate mechanism for deciding the legal question of whether an agency could reasonably have found the facts as it did."  *Id.*  In other words, rather than applying the generally applicable standard for summary judgment set out in Fed. R. Civ. P. 56(c) when reviewing administrative action on summary judgment, the courts apply a "modified standard", *i.e.*,

"whether the agency acted appropriately given the standards of review set forth by the Admin-istrative Procedure Act or the statute authorizing the agency's action." *Willingham v. Dep't of Labor*, 475 F. Supp. 2d 607, 611 (N.D. Tex. 2007)(citing *Castillo v. Army & Air Force Exchange Serv.*, 849 F.2d 199, 202-03 (5th Cir. 1988).

**B. <u>Scope of Judicial Review</u>**

The appropriate standards of review under the APA to be applied by the Court are set forth in § 706(2), entitled "Scope of Review." It provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
>
> . . .
>
>> (2) hold unlawful and set aside agency action, findings, and conclu-sions found to be –
>>
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>>
>>> (B) contrary to constitutional right, power, privilege, or immunity;
>>>
>>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>>
>>> (D) without observance of procedure required by law;
>>>
>>> (E) unsupported by substantial evidence in a case subject to [5 U.S.C. §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or
>>>
>>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or

those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

"The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). In general, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Lorion*, 470 U.S. at 744.

Here, Plaintiff provides numerous affidavits that are not part of the administrative record and were not considered by the BOP when it disciplined Plaintiff. His verified original complaint also provides facts that were not before the BOP and not considered by it. Courts may consider newly developed evidence "to determine what the agency had done and why it had done it, both of which are acceptable under *Overton Park* and the APA." *Sierra Club v. Peterson*, 185 F.3d 349, 368 (5th Cir. 1999); *see also Stewart v. Potts*, 126 F. Supp. 2d 428, 434-35 (S.D. Tex. 2000) (courts may, in their discretion, go beyond administrative record and conduct extra record inquiry in rare instances). The Federal Circuit has also found that courts may allow "extra-record" evidence when (1) the agency does not adequately explain its action in the administrative record supplied to the court; (2) the agency failed to consider factors relevant to its final decision; (3) the agency considered evidence omitted from the administrative record; (4) the case is so complex that additional evidence

15

is needed to enable the court to clearly understand the issues; (5) evidence arising after the agency action shows whether the decision was correct or not; (6) the agency is sued for failing to take action; (7) the case arises under the National Environmental Policy Act ("NEPA"); and (8) relief is at issue, especially at the preliminary injunction stage. *ITT Fed. Servs. Corp. v. U.S.*, 45 Fed. Cl. 174, 185 (1999)).

Plaintiff has not shown that any of the permitted exceptions apply in this case, so only the administrative record will be considered.

## C. <u>Review Under § 706(2)(A)</u>

Defendant moves for summary judgment on Plaintiff's claim that the BOP's disciplinary action was arbitrary, capricious, an abuse of discretion, or in violation of law under 5 U.S.C. § 706(2)(A). (*See* BOP's Mem. at 10-12.)

Review under the arbitrary and capricious standard is deferential. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2529 (2007). A court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Nevertheless, the agency is obliged to "examine the relevant data and articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. Reviewing courts must consider whether relevant factors were considered and whether the agency made "a clear error of judgment." *Id.* An agency's decision is not arbitrary and capricious unless it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* (quoting *State Farm*, 463 U.S. at 43). Although the reviewing courts do "not supply a reasoned basis for the agency's action that the agency itself has not given", decisions "of less than ideal

clarity" will be upheld "if the agency's path may reasonably be discerned." *Id.* (citations omitted).

"The burden of proving that an agency decision was arbitrary or capricious generally rests with the

party seeking to overturn the agency decision." *Tex. Comm'n on Natural Res. v. Van Winkle*, 197

F. Supp. 2d 586, 596 (N.D. Tex. 2002).

Because the federal courts have a very narrow role in reviewing prison proceedings,[11] the

prison discipline context has developed a more particularized body of law regarding the arbitrary

and capricious standard. *See Stewart v. Thigpen*, 730 F.2d 1002, 1005 (5th Cir. 1984) (civil rights

action against state officers and employees). The Fifth Circuit has held in a non-APA context that

"[t]he federal courts cannot assume the task of retrying all prison disciplinary disputes. . . . [n]o de

novo review of the disciplinary board's factual finding is required, but the courts must consider

whether" the discipline decision is supported by "some facts" or "whether any evidence at all" sup-

ports the disciplinary action. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A Oct. 1981)

(habeas/civil action stemming from state disciplinary proceedings) (citing *Willis v. Ciccone*, 506

F.2d 1011, 1018-19 & n. 11 (8th Cir. 1974) (involving a federal prisoner in a non-APA context));

*accord Stewart*, 730 F.2d at 1005-06; *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994) (per

curiam) (civil rights action involving state disciplinary proceedings); *McGlinchey v. United States*,

996 F.2d 306, 306, 1993 WL 241793, at *2 (5th Cir. 1993) (per curiam) (involving federal prisoner

and assuming arguendo that APA applies to the BOP). The Fifth Circuit has also noted that "[t]he

quantum [of evidence] must be appropriate in the circumstances and allow a determination that the

decision was not arbitrary or capricious." *Rabalais*, 659 F.2d at 545 n.18; *accord Reeves*, 19 F.3d

---

[11] The courts have long recognized "a policy of minimum intrusion into the affairs of . . . prison administration . . . prison officials enjoy wide discretion in the operation of [their] penal institutions." *Williams v. Edwards*, 547 F.2d 1206, 1211-12 (5th Cir. 1977) (relying on *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401(1989)).

at 1062 (holding that "the federal courts cannot retry every prison disciplinary dispute; rather, the court may act only where arbitrary or capricious action is shown").  Thus, in the prison discipline context, the Fifth Circuit has effectively utilized the "some facts" or "any evidence at all" standards as the standard for arbitrariness and capriciousness.  In the same context, the Supreme Court has accepted the "some evidence" standard so as to "help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens."  *Superintendent v. Hill*, 472 U.S. 445, 455-57 (1985).

Defendant concedes that its regulations permit Plaintiff to assist other inmates with their legal work and even possess their documents in the library.  (BOP's Mem. at 11-12; *accord* BOP App. at 20.)  It argues, however, that "it is clear that [its] decision to classify the plaintiff based on his admitted possession of other inmates' non-legal property (stamps) is not arbitrary or capricious."  (BOP's Mem. at 10.)  It maintains that it is a violation of prison policy to possess stamps belonging to another inmate.  (*Id.* at 12 (citing 28 C.F.R. § 553.13(b)(2)(ii)).)  Citing to the administrative record at pages 14 and 17 through 20, the BOP contends that Plaintiff admitted that the stamps were not his.  (*Id.*)  While recognizing that Plaintiff now claims ownership of the stamps, it argues that such claim "contradicts his prior written statements disavowing any knowledge of the stamps" as reflected at pages 12, 15, 16, 18, 19, and 20 of the administrative record.  (*Id.*)

On page 12 of the administrative record, Plaintiff states that he "admitted to possession of other inmate's legal material in the law library which is specifically authorized", and on the next page, he discusses why the legal files do not constitute a violation of any prison policy.  In reference to the stamps, he states:

> I had no personal knowledge of any stamps in those files, but I possessed the files & if any stamps were therein, their purpose was for mailing not payment.  The report

> totally fails to state how many stamps were in the files. . . I am permitted to possess
> up to 3 books of stamps. Fewer than 3 books would have been found in those files
> . . .

Page 20 of the record mentions Plaintiff's claimed lack of knowledge regarding the books of stamps attached to the files and BOP's finding of this claim "unlikely". Although Plaintiff does not expressly admit that the stamps were not his, he claims that he did not know the stamps were in the files. Defendant could reasonably infer from Plaintiff's admitted lack of knowledge that the stamps were not his. The admission that Plaintiff lacked knowledge of the stamps thus provides some factual basis for finding that he possessed stamps of another inmate.[12] *See Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding that even meager, indirect evidence is enough to support a prison disciplinary action).

Relying on 28 C.F.R. § 553.13(b)(2)(ii), Defendant equates Plaintiff's possession of other inmate's stamps to possessing "nuisance contraband." (BOP's Mem. at 12.) Under prison regulations, "[c]ontraband is material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution." 28 C.F.R. § 500.1(h). "Nuisance contraband" is "any item other than hard contraband", such as weapons and intoxicants, "which has never been authorized, or which may be, or which previously has been authorized for possession by an inmate, but whose possession is prohibited

---

[12] Plaintiff vigorously claims that the stamps were his. He stated in his initial, verified submission to the Court that the two cent stamps "were in the front of the file drawer to be used to supplement [his thirty-nine cent] stamps for mailing." (Original Compl. at 9, ¶ 25.) In response to Defendant's motion, Plaintiff also specifically avers that the stamps were his. (*See* Pl's Aff. at 5, ¶ 17.) He avers that he stated at his discipline hearing that he had no knowledge of stamps in his drawer, but if any were there, they were for mailing purposes. (*Id.* at 4-5, ¶ 16.) He explains that although he did not remember any stamps being in the file cabinet, he knew that no other inmate had given him any stamps as payment or to mail their pleadings. (*See id.*) He further explains that he "first realized exactly what 'stamps' the Incident Report referred to after . . . being released from Special Housing on June 20, 2007" and that once he saw the books of two cent stamps he "realized what they were and that [he] owned them." (*See id.* at 5, ¶ 17.) Plaintiff has shown no basis for considering this extra-record evidence, however.

when it presents a threat to security or its condition or excessive quantities of it present a health, fire, or housekeeping hazard." *Id.* § 553.12(b)(2). As stated in § 553.13(b)(2)(ii), "[i]tems obtained from another inmate (for example, through purchase, or as a gift) without staff authorization may be considered nuisance contraband for which a claim of ownership is ordinarily not accepted."[13] Possession of contraband would certainly fall within the scope of a Code 305 violation – "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels."

It is undisputed that Plaintiff possessed three books of two-cent stamps. To the extent the stamps belonged to another inmate, even in the small quantity at issue, they constitute contraband within the meaning of the prison regulations. It is certainly reasonable to expect property of one inmate in the unauthorized possession of another inmate to adversely affect the security, safety, or good order of the institution.[14] Because some evidence supports the finding that the stamps were not Plaintiff's, the deference given to prison disciplinary decisions requires acceptance of that as fact in this case. An inmate may not challenge a fact or conclusion found through the prison disciplinary process when such fact or conclusion is supported by some evidence. *See Gonzalez v. Berkebile*, No. 3:07-CV-1533-D, 2008 WL 1758630, at *2 (N.D. Tex. Apr. 10, 2008).

Plaintiff argues that his possession of the stamps at issue here does not constitute a Code 305

---

[13] The latter part of this statement is best understood in the context in which it is found. Section 553.13 sets out the procedures for handling contraband. Subparagraph (b)(2)(ii) provides a seven-day period for providing "evidence of ownership" of items listed on a required inventory of confiscated property.

[14] The Court recognizes that inmates at FCI Seagoville are authorized to retain stamps purchased from the prison commissary as long as the value does not exceed sixty first class stamps. *See* Program Statement P5580.07, *Personal Property, Inmate* (Dec. 28, 2005), Attachment A at 3. The BOP has thus predetermined that possession of one's own stamps in a lesser quantity does not constitute contraband. However, a reading of the regulations as a whole provide ample support for finding that possessing stamps of another inmate, in whatever quantity, equates to possessing contraband.

violation because (1) the three books of two-cent stamps do not exceed the allowable quantity of stamps that inmates may possess and (2) Defendant has shown no regulation or policy that prohibits law clerks from keeping $1.20 in stamps in their file drawer in the law library. (*See* Pl.'s Mem. at 16.) The Incident Report, however, specifically charges a Code 305 violation ("POSSESSION OF ANYTHING UNAUTHORIZED"), and the facts stated there allege possession of legal materials of other inmates with stamps attached. (*See* BOP's App. at 3.) When stamps are properly characterized as contraband within the meaning of prison regulations, an inmate may be disciplined for their possession regardless of the quantity. Because the stamps belonged to other inmates, they were not issued to Plaintiff through regular channels, and he was thus unauthorized to possess them.

Because there is evidence to support finding that Plaintiff possessed an unauthorized item, *i.e.*, stamps belonging to other inmates, the BOP did not arbitrarily or capriciously discipline Plaintiff. The disciplinary action against Plaintiff does not constitute an abuse of the wide discretion granted prison officials in the operation of their prison facilities and was not taken in violation of law. The Court should find that the disciplinary action against Plaintiff did not violate § 706(2)(A).[15]

## V. CONCLUSION

The Court should **GRANT** Defendant's motion to dismiss, in part, and **GRANT** the alternative motion for summary judgment.

---

[15]Although Plaintiff cites only to § 706(2) in his complaint, he expressly and consistently cites to the arbitrary and capricious and abuse of discretion language standard in subsection (A). (*See* Compl. at 3, 9-10, 18.) In his memorandum in support of his response to Defendant's motions, he cites only to subsections (A) and (B) of § 706(2) as providing the applicable standards of review under the APA. (*See* Pl. Mem. at 17.) Neither his complaint nor his response provide any basis to construe his action as arising under any other subsections of § 706(2), and the Court reasonably construes his complaint as asserting claims under those two subsections only. Although Plaintiff claims a due process violation under subparagraph (B), the Court has already found no such violation through judicial screening. (*See generally* FCR; Order Accepting.) Because Plaintiff does not otherwise suggest the applicability of subparagraph (B), this ground need not be addressed again.

**SO RECOMMENDED on this 6th day of March, 2009.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE